```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
STEPHEN LOCURTO,

                                        Plaintiff,
                                                                    REPORT &
                                                                    RECOMMENDATION
                 -against-                                          23-cv-387-DG-SJB

UNITED STATES BUREAU OF PRISONS;
METROPOLITAN DETENTION CENTER,
BROOKLYN, NY; OFFICER-IN-CHARGE HERNANDEZ;
CORRECTIONS OFFICER W. SANTIAGO;
CORRECTIONS OFFICER O. MARTINEZ;
LIEUTENANT LIDAKER,

                                        Defendants.
----------------------------------------------------------------X
```

**BULSARA, United States Magistrate Judge:**

*Pro se* Plaintiff Stephen LoCurto ("Plaintiff" or "LoCurto"), who is currently incarcerated at Metropolitan Detention Center ("MDC") Brooklyn, has filed two lawsuits: one against Defendant NYU Langone Lutheran Hospital ("NYU Langone"); and one against Defendants United States Bureau of Prisons ("BOP"), the MDC, and Officers Hernandez, W. Santiago, O. Martinez, and Lieutenant Lidaker (collectively, the "Federal Defendants").  In this case against BOP and the Federal Defendants, he alleges violations of 18 U.S.C. § 1959(a)(1) and § 1959(a)(5), negligence, recklessness, and deliberate indifference to his health and safety.  He alleges that, while at MDC, he was poisoned by Officer Hernandez, that the guards ignored his cries for help, and that he was later taken to NYU Langone, where employees worked with BOP staff to kill him. (*See generally* Am. Compl. against BOP ("BOP Am. Compl."), Case No. 23-CV-387, Dkt. No. 19; Am. Compl. against NYU Langone ("NYU Langone Am. Compl."), Case No. 23-

CV-386, Dkt. No. 20). The Court addresses the Federal Defendants' Motion to Dismiss in this Report and Recommendation, and for the reasons stated below, recommends that the motion be granted in part and denied in part.

FACTUAL AND PROCEDURAL BACKGROUND

For the purposes of this motion, the Court is "required to treat" the Complaint's "factual allegations as true, drawing all reasonable inferences in favor of [the Plaintiff] to the extent that the inferences are plausibly supported by allegations of fact." *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021). The Court "therefore recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the court, as we have no way of knowing at this stage what are the true facts." *Id.* When a party proceeds *pro se*, the Court must liberally construe the litigant's submissions and interpret them to raise the strongest arguments that they suggest. *Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). "[A] *pro se* complaint, however inartfully pled, must be held to less stringent standards that formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations omitted).

Because the events at issue cross both cases, herein the Court has recited and considers facts from Plaintiff's Amended Complaints in both actions, which refer to each other; the documents he attached to those pleadings; and his opposition papers. *See Parris v. N.Y. State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 360–61 (S.D.N.Y. 2013) ("When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.");

2

*see also Levinson v. United States*, 594 F. Supp. 3d 559, 567 (S.D.N.Y. 2022) ("[A] district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion [to dismiss]." (quoting *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013)).

In January 2021, when LoCurto was incarcerated at MDC, (BOP Am. Compl. at 4, 11), his food was allegedly poisoned by Officer Hernandez. (*Id.* at 11). After eating the allegedly tainted food, LoCurto immediately began feeling "unbearable pain." (*Id.*). He began yelling and screaming, and he vomited. (*Id.*). He started pushing the emergency call button in his cell, but it did not work. (*Id.*). While he was yelling for help, Officer Hernandez walked by his cell, and other officers heard him screaming. (*Id.*). Throughout the night, LoCurto yelled, "please help me" and "I'm dying," as he continued to hit the emergency call button, and eventually passed out. (BOP Am. Compl. at 4, 8). When he hit the button the next day, medical assistance was summoned, and he was taken to the medical unit at MDC, and then to the emergency room at NYU Langone. (*Id.*).

While at NYU Langone, LoCurto was taken into surgery. (NYU Langone Am. Compl. at 7, 18). He alleges his surgeon signaled to the officers that he had died, and that Officer Martinez said, "Fuck him, he's a murderer[,] let him die." (*Id.* at 7). LoCurto woke up, saw people standing around stainless steel tables, and then went into a coma. (*Id.* at 8). He alleges he woke up again after he was taken off life support on January 24, 2021. (*Id.*). While LoCurto was in the ICU after his surgery, one of his doctors, "Dr. Baden," removed a bandage, and three staples popped open "with a gel like substance . . . oozing out of the surgical wounds." (*Id.* at 6). Dr. Baden then ordered a

3

wound vac machine to drain the substance. (*Id.* at 7). LoCurto alleges the gel was used to preserve his organs for organ donation. (NYU Langone Am. Compl. at 7).

LoCurto also alleges that while at the hospital, an MRI technician "pumped an unknown fluid into [his] IV line 3 times," and that "on the [third] time," he flat-lined and died. (*Id.* at 4). When he woke up, an officer named Lieutenant Dixon said, "You're safe now[;] we're here to protect you." (*Id.*). He also claims that another NYU Langone staff member inserted a wire into his nose that caused "great pain." (LoCurto Opp'n to NYU Langone's Mot. to Dismiss dated Aug. 9, 2023 ("LoCurto NYU Opp'n"), Case No. 23-CV-386, Dkt. No. 24 at 3). He also alleges that the staff at NYU Langone had a "betting pool on when [he] would die," and that attempts were made on his life. (NYU Langone Am. Compl. at 4; BOP Am. Compl. at 4). While in the ICU, LoCurto alleges that Officer W. Santiago was trying to kill him, and that the employees of NYU Langone worked in conjunction with BOP to kill him. (*See* BOP Am. Compl. at 16, 20; NYU Langone Am. Compl. at 16, 20; *see also* LoCurto Opp'n to BOP's Mot. to Dismiss dated Dec. 7, 2023 ("LoCurto BOP Opp'n"), Case. No. 23-CV-387, Dkt. No. 28 at 5–6). He simultaneously claims that other staff at NYU Langone called the FBI on his behalf because of these attempts on his life. (BOP Am. Compl. at 4). LoCurto was "in surgery, a coma, and the ICU" until February 6, 2021, and he was released from NYU Langone on February 9, 2021. (LoCurto BOP Opp'n at 3). From there, he was transferred to a nursing home until April 1, 2021, when he returned to MDC. (*Id.*).

On April 6, 2021, LoCurto filed an Inmate Request for Informal Resolution (BP-8), in which he alleged that his food was poisoned, and that he did not receive medical attention for a day. (BOP Am. Compl. at 7). On May 1, 2021, he submitted a Request for Administrative Remedy (BP-9) about the same incident, (*id.* at 11), and the Warden

4

responded to this request on May 24, 2021. (*Id.* at 10). He alleges that his BP-11 about the incident at the prison was signed by the Central Office on November 20, 2021. (LoCurto BOP Opp'n at 2). He filed a separate BP-9 on May 27, 2021, where he requested an investigation into what happened to him at NYU Langone while under the protection of the BOP. (BOP Am. Compl. at 15–16, 19–20).

The Federal Defendants moved to dismiss LoCurto's Amended Complaint, (BOP Mot. to Dismiss dated Jan. 16, 2024, Dkt. No. 29), arguing that there is no private right of action under 18 U.S.C. § 1959, that LoCurto failed to exhaust his administrative remedies for his *Bivens* claims and claims under the Federal Tort Claims Act ("FTCA"), and that even if he had exhausted his *Bivens* claims, his *Bivens* claims fail. (Mem. of Law in Supp. of BOP's Mot. to Dismiss ("BOP Mem. of Law"), Dkt. No. 29-1 at 7–17).

## DISCUSSION

"The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of . . . claims for relief." *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 155 (E.D.N.Y. 2018) (citing *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)). In deciding such a motion, the Court must "construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (quotations and alteration omitted); *Amadei*, 348 F. Supp. 3d at 155 ("[W]hen reviewing a complaint on a motion to dismiss for failure to state a claim, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of [the non-moving party].").

Once the facts are construed in the light most favorable to the non-moving party—here, LoCurto—to avoid dismissal, there must be sufficient facts that allege a

plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (quotations omitted)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain more than "naked assertion[s] devoid of further factual enhancement." *Id.* (quotations omitted). In other words, a plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; Fed. R. Civ. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citation omitted). The determination of whether a party has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Escamilla v. Young Shing Trading Co.*, No. 17-CV-652, 2018 WL 1521858, at *2 (E.D.N.Y. Jan. 8, 2018), *report and recommendation adopted*, 2018 WL 1033249, at *3 (Feb. 23, 2018).

LoCurto claims that he was poisoned and denied medical care while at MDC. (BOP Am. Compl. at 8). The Court construes his Amended Complaint to allege claims for: (1) murder and attempted or conspiracy to murder under 18 U.S.C. § 1959(a)(1) and § 1959(a)(5); (2) a civil RICO claim; (3) a *Bivens* claim for violation of the Eighth Amendment for deliberate indifference to the serious medical needs of a prisoner, (*see* LoCurto BOP Opp'n at 8); and (4) tort claims, including battery. (*Id.* at 9).

A. <u>Claims Under 18 U.S.C. § 1959</u>

The federal murder statute does not contain a private right of action. LoCurto's attempt to somehow bring federal criminal charges against Defendants or invoke the criminal statutes to state a civil claim is "based on an indisputably meritless legal theory," *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (quotations omitted), and the claim must be dismissed. *See, e.g.*, *Storm-Eggink v. Gottfried*, 409 F. App'x 426, 427 (2d Cir. 2011) (affirming district court's *sua sponte* dismissal of *pro se* plaintiff's complaint as frivolous because claims invoking criminal statutes lacked even an arguable legal basis); *Walker v. Wuchte*, No. 22-CV-1532, 2022 WL 2161180, at *2 (E.D.N.Y. June 15, 2022) (dismissing as frivolous *pro se* Plaintiff's attempt to sue Defendants for violations of criminal statutes); *Walker v. Pastoressa*, No. 22-CV-997, 2022 WL 3716742, at *3 (E.D.N.Y. Aug. 29, 2022) (same); *see also Hill v. Didio*, 191 F. App'x 13, 14–15 (2d Cir. 2006) ("A private individual may bring suit under a federal statute only when Congress specifically intended to create a private right of action. . . . As a general matter, we have long recognized that crimes are prosecuted by the government, not by private parties.").

B. <u>RICO Claim</u>

LoCurto also attempts to bring a civil RICO claim for murder and attempted murder. The Court recommends dismissing this claim because LoCurto does not allege any economic injuries.

RICO provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). "To state a claim under RICO's civil provision, 18 U.S.C. § 1962(c), a plaintiff must allege (1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern

7

(4) of racketeering activity (5) directly or indirectly invests in, or maintains [an] interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce.  Section 1961(1), in turn, identifies predicate 'acts' that can form a pattern of racketeering activity, which include mail fraud, wire fraud, and extortion[.]" *Liang v. Home Reno Concepts*, LLC, 803 F. App'x 444, 447 (2d Cir. 2020) (first alteration in original) (citations and quotations omitted).  Although murder and assault are types of racketeering activity, *see* 18 U.S.C. § 1961(1), a civil RICO claim must be based on economic, not personal, injuries.  *See Bascuñán v. Elsaca*, 874 F.3d 806, 817 (2d Cir. 2017) ("All civil RICO injuries are, by the terms of the statute itself, economic losses of one kind or another.  A plaintiff bringing a civil RICO claim must allege an injury to his business or property; he cannot, for example, recover for personal injuries." (quotations omitted)).  Because LoCurto does not allege economic injury, any RICO claim should be dismissed.

### C.  *Bivens* Deliberate Indifference Claims

LoCurto argues that Defendants violated his Fifth and Eighth Amendment rights by actions evincing deliberate indifference to his medical needs following his alleged poisoning by Defendant Hernandez.  (*See* LoCurto BOP Opp'n at 4).  The Federal Defendants argue that any *Bivens* claim should be dismissed because (1) LoCurto failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"); and (2) it is barred under *Egbert v. Boule*, 142 S. Ct. 1793 (2022).  (BOP Mem. of Law at 11–19).  The Court disagrees and finds LoCurto has stated an Eighth Amendment deliberate indifference claim.

As an initial matter, "[a] *Bivens* action, based upon alleged constitutional violations by federal officials, may be brought against the federal officers involved in

their individual capacities." *Rolle v. Metro. Detention Ctr. Brooklyn*, No. 21-CV-4563, 2022 WL 1105183, at *2 (E.D.N.Y. Apr. 13, 2022) (citing *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 509 (2d Cir. 1994)). "However, a *Bivens* claim against a federal agency or federal employees sued in their official capacities is precluded, as an action against a federal agency is essentially a suit against the United States, and *Bivens* actions against the United States are barred under the doctrine of sovereign immunity." *Id.* (citing *Robinson*, 21 F.3d at 510). Accordingly, any *Bivens* claim may only proceed against the Individual Defendants, not BOP or MDC. The Court therefore recommends dismissing LoCurto's Eighth Amendment claims against Defendants BOP and MDC. *See, e.g.*, *id.* (dismissing *Bivens* claim against BOP, MDC, and the Department of Justice on sovereign immunity grounds).

1. Exhaustion

"Where a plaintiff raises a *Bivens* claim in the context of alleged prison abuse, the Court must first determine whether 'administrative remedies [that] are available [to the plaintiff] are exhausted' pursuant to the Prison Litigation Reform Act." *Carter v. United States*, No. 22-CV-6715, 2024 WL 1345313, at *6 (E.D.N.Y. Mar. 29, 2024) (quoting 42 U.S.C. § 1997e(a)). "The 'exhaustion requirement applies to all inmate suits about prison life, whether they involve general grievances or particular episodes, and whether they allege excessive force or some other wrong.'" *Kingsberry v. Carter*, No. 21-CV-9076, 2022 WL 10142889, at *1 (S.D.N.Y. Oct. 17, 2022) (quoting *Porter v. Nussle*, 534 516, 532 (2002)). "The PLRA 'requires proper exhaustion,' meaning that the prisoner must compl[y] with the system's critical procedural rules.'" *Mendoza v. Edge*, 615 F. Supp. 3d 163, 173 (E.D.N.Y. 2022) (alteration in original) (quoting *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). The exhaustion requirement is mandatory, *Ross v. Blake*, 578

9

U.S. 632, 638 (2016), but the PLRA "contains its own, textual exception to mandatory exhaustion." *Id.* at 642. An inmate must exhaust *available* remedies; those that are "capable of use to obtain some relief for the action complained of." *Id.* (quotations omitted). An inmate thus is "exempt from the exhaustion requirement only when . . . administrative remedies are unavailable." *Rucker v. Giffen*, 997 F.3d 88, 92 (2d Cir. 2021) (quotations omitted) (following *Ross*).

"Failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement[;] . . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (quotations omitted). Accordingly, "it is the defendant's burden to establish that the plaintiff failed to meet the exhaustion requirements." *Reynolds v. Grove*, No. 21-CV-4763, 2023 WL 2601710, at *4 (S.D.N.Y. Mar. 22, 2023), *appeal dismissed*, No. 23-706 (2d Cir. Sept. 1, 2023). "Thus, as with other affirmative defenses, dismissal . . . for failure to exhaust is appropriate only if that failure is apparent from the face of the complaint." *Morgan v. Ward*, No. 14-CV-7921, 2016 WL 427913, at *4 (S.D.N.Y. Feb. 2, 2016).

To exhaust administrative remedies, a "federal inmate[] must comply with the BOP's Administrative Remedy Program, a four-step process for inmates who 'seek formal review of an issue relating to any aspect of his/her own confinement.'" *Rosenberg v. Pliler*, No. 21-CV-5321, 2021 WL 6014938, at *2 (S.D.N.Y. Dec. 20, 2021) (quoting 28 C.F.R. § 542.10(a)). BOP's Administrative Remedy Program consists of a four-step process: (1) an inmate must first attempt to resolve the issue informally by presenting the issue to the prison staff, 28 C.F.R. § 542.13; (2) if the issue is not resolved, the inmate must then submit a Request for Administrative Remedy (BP-9)

form to the Warden within 20 days of the incident that forms the basis of the request, *id.* § 542.14; (3) if the request is denied, the inmate may appeal the decision using a BP-10 form to the Regional Director within 20 days of the date that the Warden signed the response, *id.* § 542.15(a); and finally, (4) if the inmate is not satisfied with the Regional Director's response, he may appeal within 30 days to the General Counsel in the Central Office using a BP-11 form. *Id.* "No administrative remedy appeal is considered finally exhausted until it is considered by BOP's Central Office." *Cruz v. Hastings*, No. 20-CV-4392, 2021 WL 4691375, at *4 (S.D.N.Y. Oct. 6, 2021).

LoCurto alleges that he has exhausted his administrative remedies by filing his BP-8, BP-9, and BP-11. (LoCurto BOP Opp'n at 2). He submitted his BP-8 on April 6, 2021, (BOP Am. Compl. at 7), and his BP-9 on May 1, 2021, (*id.* at 11); the Warden responded to the BP-9 on May 24, 2021, (*id.* at 10). LoCurto does not attach his BP-10, the BP-10 denial, or his BP-11, but he alleges that his BP-11 "was signed by [the] Central Office on [November 20, 2021]." (LoCurto BOP Opp'n at 2). Consideration of the BP-11 by the Central Office is the final step in BOP's Administrative Remedy Program. *See Cruz*, 2021 WL 4691375, at *4. Though not required to do so, LoCurto has alleged that his claim was exhausted.

The Individual Defendants assert that LoCurto's BP-9 was not timely filed.[1] (BOP Mem. of Law at 13–14). Their briefs do not address LoCurto's allegations that he was

---

[1] The Court declines to consider the additional materials Defendants submitted in support of their motion to dismiss, including a declaration from John Hayes, a legal assistant in the legal department at MDC, as well as SENTRY records attached to the declaration. Such materials may not be considered on a motion to dismiss. *See Parris*, 947 F. Supp. 2d at 362 ("A district court has two options when presented with matters outside the pleadings in conjunction with a Rule 12(b)(6) motion: '[1] the court may exclude the additional material and decide the motion on the complaint alone or [2] it may convert the motion to one for summary judgment under [Rule] 56 and afford all

11

told that he was permitted to file a late BP-9 due to his hospital stay, or his contention that he filed a BP-11 to completion. (*See* LoCurto BOP Opp'n at 1–2).

The Individual Defendants' cursory and incomplete arguments are insufficient to demonstrate that the Amended Complaint demonstrates a failure to exhaust. Typically, complaints that clearly point to non-exhaustion "include allegations amounting to an admission by the plaintiff that he did not exhaust for whatever reason." *Munoz v. Eliezer*, No. 16-CV-6049, 2018 WL 1626170, at *4 (S.D.N.Y. Mar. 30, 2018); *e.g.*, *Garvin v. Rivera*, No. 13-CV-7054, 2015 WL 876464, at *3 (S.D.N.Y. Feb. 28, 2015) (finding failure to exhaust where "[p]laintiff specifically pleads that he initiated the administrative process by filing a grievance, but concedes that he did not appeal that decision"). That is not the case here. LoCurto only concession is that his BP-8 was filed outside the allowed 20 days because he was in the hospital, but he explains that his time was extended as he was unable to fill out the form while in the hospital. (LoCurto BOP Opp'n at 1–2). He alleges that he was told to file his claim when he returned, and that he completed the exhaustion process by having the BP-11 form signed by the Central Office. (*Id.* at 2).

Because failure to exhaust administrative remedies is an affirmative defense, and it is not clear on the face of the Amended Complaint that LoCurto failed to exhaust, the

---

parties the opportunity to present supporting material.'" (alteration in original) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988))). And the Court declines to convert the motion into one for summary judgment because LoCurto is proceeding *pro se* and has not been "given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. Pro. 12(d); *e.g.*, *Morgan v. Ward*, No. 14-CV-427913, 2016 WL 427913, at *4 (S.D.N.Y. Feb. 2, 2016) ("Given that the plaintiff is proceeding *pro se*, and should be afforded clear notice of a motion for summary judgment, the Court declines to convert the motion to dismiss into a motion for summary judgment, and, therefore, does not consider Mr. Johnson's declaration or the exhibits attached to it.").

12

Court recommends denying the motion to dismiss on that ground. *See Morgan*, 2016 WL 427913, at *5–*6 (finding BOP did not establish failure to exhaust administrative remedies and that the defense was not clear on the face of the complaint where "plaintiff attempted to justify the lateness" of his forms, and plaintiff alleged that "he filed BP-8, BP-9, BP-10, and BP-11 forms").[2]

2. *Bivens* Claims

In their motion to dismiss, the Individual Defendants argue that LoCurto has not stated a claim recognized under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and its progeny. (BOP Mem. of Law at 14–17).

LoCurto alleges that the Individual Defendants violated his Fifth and Eighth Amendment rights "for cruel and unusual punishment." (LoCurto BOP Opp'n at 4).[3] He argues that he should be granted relief under *Carlson v. Green*, 446 U.S. 14 (1980), for deliberate indifference to medical needs. (*Id.* at 2).

---

[2] The claim that LoCurto exhausted relates to his treatment at MDC, not to the federal involvement at NYU Langone. The only officer alleged to have engaged in conduct at MDC who is also a named defendant is Hernandez. (*See* BOP Am. Compl. at 11). As such, the Court does not find any basis for this *Bivens* claim against the other named defendants. Any such claim against Santiago, Martinez, and Lidaker is not exhausted and should be dismissed.

[3] Deliberate indifference to serious medical needs for inmates is considered under the Eighth Amendment; the Fifth Amendment covers deliberate indifference for pretrial detainees. *See Weyant v. Okst*, 101 F. 3d 845, 856 (2d Cir. 1996) ("In the context of a convicted prisoner, who has a right under the Eighth Amendment to be free from cruel and unusual punishments, '[a] prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment.' . . . The rights of one who has not been convicted are protected by the Due Process Clause[.]" (first alteration in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994))). Any Fifth Amendment claim, therefore, should be dismissed, since LoCurto is not a pretrial detainee—he is serving his prison sentence at MDC.

In *Bivens*, the Supreme Court established "a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures." *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017). The Court has extended *Bivens* to two other contexts: in *Davis v. Passman*, where the Court found a damages remedy under the Fifth Amendment Due Process Clause for a sex discrimination suit against a member of Congress, 442 U.S. 228, 248–49 (1979), and in *Carlson v. Green*, where the Court found a damages remedy under the Eighth Amendment Cruel and Unusual Punishment Clause where a federal inmate sued prison staff for failure to provide adequate medical treatment. 446 U.S. at 16–19. "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 582 U.S. at 131.

LoCurto's allegations of deliberate indifference to his medical needs in violation of the Eighth Amendment fall squarely within *Carlson*. *See* 446 U.S. at 16; *see also Mills v. Travers*, No. 20-CV-3035, 2024 WL 1858224, at *3 (E.D.N.Y. Apr. 29, 2024) (finding no new *Bivens* context where plaintiff alleged deliberate indifference to his medical needs in violation of the Eighth Amendment by federal prison officials); *Perez-Lopez v. Bialor*, No. 20-CV-2518, 2023 WL 2682922, at *7 (E.D.N.Y. Mar. 29, 2023) (same); *Mendoza v. Edge*, 615 F. Supp. 3d 163, 171 (E.D.N.Y. 2022) (finding no new context where "[plaintiff's] claim that the defendants were deliberately indifferent to his health b[ore] an extremely strong resemblance to the Eighth Amendment deliberate indifference claim at issue in *Carlson*" (quotations omitted)).

"To state an Eighth Amendment claim against a prison official for providing inadequate medical care, an inmate must allege facts showing the offending official's

14

'deliberate indifference to a prisoner's serious medical needs.'" *Thomas v. Wolf*, 832 F. App'x 90, 92 (2d Cir. 2020) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "There are two requirements: 'First, the prisoner must prove that the alleged deprivation of medical treatment is, in objective terms, sufficiently serious—that is, the prisoner must prove that his medical need was a condition of urgency, one that may produce death, degeneration, or extreme pain.' . . . 'Second, the prisoner must prove that the charged official acted with a sufficiently culpable state of mind.'" *Mendoza*, 615 F. Supp. 3d at 171–72 (quoting *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005)).

"In determining whether a medical need is sufficiently serious," the factors to be considered include "whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects an individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain." *Charles v. Orange County*, 925 F.3d 73, 86 (2d Cir. 2019).

LoCurto's allegations pass muster under these criteria. He alleges that Officer Hernandez poisoned his food, which Officer Lee then gave him. (BOP Am. Compl. at 11). He began feeling "unbearable pain" and proceeded to "yell and scream for help." (*Id.*). Though he continuously pushed the emergency call button in his cell, he alleges it was turned off and did not work. (*Id.*). He alleges that his stomach was perforated, and that he later went into septic shock and had total heart, lung, and kidney failure. (LoCurto BOP Opp'n at 5). LoCurto has alleged that his medical condition was of sufficient seriousness for a *Carlson* claim, since he claims that he was in extreme pain, was taken to the hospital, had surgery, was in a coma, experienced sepsis and organ failure, and stayed in the ICU for almost a month. *See, e.g., Quinones v. City of New York*, No. 16-CV-985, 2017 WL 775851, at * 2 (S.D.N.Y. Feb. 28, 2017) (finding extreme

15

pain during and resulting from a procedure sufficient to allege a serious medical condition); *Snyder v. Alam*, No. 15-CV-4033, 2016 WL 2642226, at *4 (S.D.N.Y. May 6, 2016) (finding allegations that a five-day delay in surgery caused permanent damage and unnecessary pain sufficiently serious); *Davis v. McCready*, 283 F. Supp. 3d 108, 120 (S.D.N.Y. 2017) (finding sufficiently serious medical condition where delay in treatment led to excruciating pain).

To meet the second requirement, a plaintiff must allege the official "must be subjectively reckless in their denial of medical care. This means that the charged official must act or fail to act while *actually aware* of a substantial risk that serious inmate harm will result." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citation, alteration, and quotations omitted). "Officials need only be aware of the risk of harm, not intend harm. And awareness may be proven 'from the very fact that the risk was obvious.'" *Id.* (citation omitted) (quoting *Farmer*, 511 U.S. at 842).

LoCurto alleges that Hernandez poisoned him, and that officers, including Hernandez, Lee, Lamour, and Valentin, passed by his cell, ignoring his cries for help. (BOP Am. Compl. at 11). Taking LoCurto's allegation that Hernandez purposefully poisoned him as true, he has sufficiently alleged that Hernandez had the requisite mental state, as Hernandez would know that his medical condition was serious. *Cf. Alli v. Steward-Bowden,* No. 11-CV-4952, 2012 WL 4053693, at *2 (S.D.N.Y. Sept. 11, 2012) (finding deliberate indifference on a motion to dismiss where plaintiff alleged prison guards physically assaulted him). Though LoCurto alleges Lee, Lamour, and Valentin ignored his cries for help, none of these officers are named defendants for this claim. Therefore, the Court finds that LoCurto has stated an Eighth Amendment *Bivens* claim against Hernandez.

D.  Other Claims

LoCurto indicates he is bringing a battery claim under New York state law. (LoCurto BOP Opp'n at 9).  He also alleges that the actions of the medical staff at NYU Langone should be attributed to BOP.  (*Id.* at 6).

The Individual Defendants, BOP, MDC, and the United States are immune from suit based on sovereign immunity.  *Leytman v. U.S. Dep't of Homeland Sec. Transp. Sec. Admin.*, 804 F. App'x 78, 79 (2d Cir. 2020).  The FTCA waives immunity as to the United States—but not federal officers and federal agencies—for certain tort claims.  *Id.* As such, any tort claims against the Individual Defendants, BOP, or MDC should be dismissed.  Even if the Court added the United States as a defendant via substitution, and also assumed that LoCurto was stating an FTCA and not a state law claim, the claims should be dismissed.  The FTCA does not waive sovereign immunity for "[a]ny claim arising out of assault [or] battery," 28 U.S.C. § 2680(h); thus, LoCurto's claims, other than for medical malpractice, are barred under this exception.  *Leytman*, 804 F. App'x at 80.

To the extent that LoCurto attributes alleged medical malpractice by NYU Langone physicians to the United States under the FTCA, that claim should be dismissed because "[t]he FTCA's limited waiver of sovereign immunity extends only to federal agencies and *federal employees* acting within the scope of their employment," *Baptiste v. Warden at Ottisville, FCI N.Y.*, No. 09-CV-5523, 2010 WL 3185748, at *10 (S.D.N.Y. Aug. 11, 2010) (emphasis added), and "does not extend to independent contractors." *Leone v. United States*, 910 F.2d 46, 49 (2d Cir. 1990).  NYU Langone employees are not employees of the federal government, and therefore, any FTCA claim against the United States is foreclosed.  *See Leticia v. United States*, No. 22-CV-7527,

17

2023 WL 7110953, at *18 (E.D.N.Y. Oct. 27, 2023) ("Plaintiffs may not find the Government vicariously liable for torts independently committed by private parties at the private detention facilities.").

CONCLUSION

For the reasons stated above, the Court recommends granting BOP's motion to dismiss in part and denying it in part; the Court recommends dismissing all claims except the *Bivens* claim against Officer Hernandez based upon the Eighth Amendment.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report.  Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates as a waiver of any further judicial review of the magistrate[] [judge's] decision." (quotations omitted)).

SO ORDERED.

*/s/ Sanket J. Bulsara*   August 12, 2024
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York