FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

OCT 24 2025

BROOKLYN OFFICE

# UNITED STATES DISTRICT COURT

for the

District of **Eastern District of New York**

Division

Stephen LoCurto

Case No. **23-CV-387**

*(to be filled in by the Clerk's Office)*

_____
Plaintiff(s)
*(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)*

-v-

OIC/MR. Hernandez
CO. LEE
CO. Lamour

_____
Defendant(s)
*(Write the full name of each defendant who is being sued. If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names.)*

Jury Trial: *(check one)* ☒ Yes ☐ No

Second Amended
Complaint

# COMPLAINT FOR A CIVIL CASE

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name                    Stephen LoCurto
Street Address          80 29th Street
City and County         PO Box 329002 Brooklyn
State and Zip Code      New York 11232
Telephone Number        _____
E-mail Address          _____

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

Name — OIC/MR. Hernandez

Job or Title *(if known)* — Officer in charge

Street Address — 80 29th Street

City and County — 329001 Brooklyn

State and Zip Code — New York 11232

Telephone Number —

E-mail Address *(if known)* —

Defendant No. 2

Name — CO, Lee

Job or Title *(if known)* — Correctional Officer

Street Address — 80 29th Street

City and County — P0, 329001 Brooklyn

State and Zip Code — New York 11232

Telephone Number — 11232

E-mail Address *(if known)* —

Defendant No. 3

Name — CO, Lamour

Job or Title *(if known)* — Correctional Officer

Street Address — 80 29th Street

City and County — Brx 329001 Brooklyn

State and Zip Code — New York 11232

Telephone Number — 11232

E-mail Address *(if known)* —

Defendant No. 4

Name — CO, Valentin

Job or Title *(if known)* — Correctional Officer

Street Address — Po Box 329001 Brooklyn

City and County — 80 29th Street

State and Zip Code — New York 329001 11232

Telephone Number —

E-mail Address *(if known)* —

"SEE Attached "A"

Defendant No. 5
OIC Gonzalez
Officer in charge
80 - 29th Street
329001 Brooklyn
New York 11232

Defendant No. 6
CO Aires
Correctional Officer
80-29th Street
329001 Brooklyn
New York 11232

Defendant No. 7
CO Henderson
Correctional Officer
80-29th Street
329001 Brooklyn
New York 11232

Defendant No. 8
CO Calixte
Correctional Officer
80-29th Street
PO Box 329001 Brooklyn
New York 11232

Defendant No. 9
C.O. Vasquez
Correctional Officer
80 29th Street
Box 329001 Brooklyn
New York 11232

Defendant No. 10
CO D. Gonzalez (big)
Correctional Officer
80 29th Street
Box 329001 Brooklyn
New York 11232

Defendant No. 11
C.O. Perry  Correctional Officer
80 29th Street
Box 329001 Brooklyn
New York 11232

Defendant No. 12
C.O. Reyes  Correctional Officer
80- 29th Street
Box 329001 Brooklyn
New York 11232

Defendant No 13
Co Diaz
Correctional Officer
PO Box 329001 Brooklyn
80-29Th Street
New York 11232

Defendant No 14
Case Manager Phayers
Case Manager
80-29Th Street
Box 329001 Brooklyn
New York 11232

Defendant No. 15
CO Peña
Correctional officer
80 29Th Street
Box 329001 Brooklyn
New York 11232

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☒ Federal question        ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

Bivens VS Six Unknown Named Agents
403 U.S. 388 (1971)

★ Institutional Remedies Completed ★ 9, 10, 11

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

   a. If the plaintiff is an individual

   The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

   b. If the plaintiff is a corporation

   The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____,

   and has its principal place of business in the State of *(name)*

   _____.

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

   a. If the defendant is an individual

   The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

## V.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:      _70/19/25_

Signature of Plaintiff      _Cephn Llat      pro se_

Printed Name of Plaintiff      _Stephen LoCurto      pro se_

### B.     For Attorneys

Date of signing:      _____

Signature of Attorney      _____

Printed Name of Attorney      _____

Bar Number      _____

Name of Law Firm      _____

Street Address      _____

State and Zip Code      _____

Telephone Number      _____

E-mail Address      _____

10/19/25

Stephen LoCurto # 58095-053
Metropolitan Detention Center
PO Box 329002
Brooklyn, New York 11232

23-CV-387
(DG) (VMS)

United States District Court
Eastern District of New York
Honerable Diane Gujarati
225 Cadman Plaza East
Brooklyn, NY 11201

Plaintiff's Second
Amended Complaint
Add 14 Officers

RE: Second Amended Complaint (Limited Amendment to Add Parties)

Dear Judge Gujarati,

Plaintiff Stephen LoCurto Alleges As Follows:

Introduction & Scope of Amendment

This Second Amended Complaint is a Limited Amendment
under Fed. R. Civ. P. 15 to add fourteen (14) individual
Defendants CO Lee, CO Lamour, CO Valentin, OIC Gonzalez,
CO Aires, CO Henderson, CO Calixte, CO Vasquez, CO D. Gonzalez,
(Big), CO Perry, CO Reyes, CO Diaz, Case Manager Phayers,
and CO Peña, based on information obtained after the
Filing of Plaintiff's First Amended Complaint (ECF No. 19)

Except for adding these defendants and conforming references to them, plaintiff reasserts and incorporates by reference the factual allegations and causes of action previously pled and allowed to proceed by the court's orders, including the memorandum & order entered November 25, 2024 adopting in part the August 12, 2024 R&R (ECF Nos. 32, 53). This pleading does not attempt to revive claims dismissed with prejudice; any such claims are repleaded solely to preserve appellate rights.

Plaintiff proceeds under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), seeking damages and appropriate equitable relief against individual federal officers for violations of the First, Fifth, and Eighth Amendments, as already alleged.

## Jurisdiction & Venue

This court has jurisdiction under 28 U.S.C. § 1331. Venue lies in this district under 28 U.S.C. § 1391(b) because the events occurred at MDC Brooklyn.

## Parties

Plaintiff: Stephen LoCurto, a federal inmate who, during the relevant times, was housed at MDC Brooklyn.

DEFENDANTS PREVIOUSLY NAMED: UNITED STATES BUREAU OF PRISONS ("BOP"); METROPOLITAN DETENTION CENTER BROOKLYN ("MDC"), OIC/OFFICER HERNANDEZ; W. SANTIAGO; O. MARTINEZ; AND LIDAKER, SUED IN THEIR INDIVIDUAL CAPACITIES (AND AS OTHERWISE ALREADY PLED)

NEWLY ADDED DEFENDANT CO LEE A CORRECTIONAL OFFICER ASSIGNED TO MDC BROOKLYN DURING THE RELEVANT PERIOD(S). SUED IN HIS/HER INDIVIDUAL CAPACITY FOR ACTIONS TAKEN UNDER COLOR OF FEDERAL AUTHORITY. SERVICE: c/o CIVIL PROCESS CLERK, U.S. ATTORNEY'S OFFICE, EDNY, 271-A CADMAN PLAZA EAST, BROOKLYN, NY 11201, AND MDC BROOKLYN, P.O. BOX 329002, BROOKLYN, NY 11232

NEWLY ADDED DEFENDANT CO LAMOUR: A CORRECTIONAL OFFICER ASSIGNED TO MDC BROOKLYN DURING THE RELEVANT PERIOD(S). SUED IN HIS/HER INDIVIDUAL CAPACITY (SAME SERVICE INFORMATION AS NOTED ABOVE)

NEWLY ADDED DEFENDANT CO-VALENTIN: A CORRECTIONAL OFFICER ASSIGNED TO MDC BROOKLYN DURING THE RELEVANT PERIOD(S). SUED IN HIS/HER INDIVIDUAL CAPACITY (SAME SERVICE INFORMATION AS NOTED ABOVE).

NEWLY ADDED DEFENDANT(S) OIC GONZALEZ, CO ATRES, CO HENDERSON, CO CALIXTE, CO VASQUEZ, CO D. GONZALEZ (BIG), CO PERRY, CO REYES, CO DIAZ, CASE MANAGER PHAYERS, CO PEÑA,

ALL BEING OFFICERS ASSIGNED TO MDC BROOKLYN DURING
THE RELEVANT PERIOD(S). SUED IN THEIR INDIVIDUAL
CAPACITIES (SAME SERVICE INFORMATION AS NOTED ABOVE)

## FACTUAL ALLEGATIONS (CONFORMING ADDITION)

INCORPORATION: PLAINTIFF INCORPORATES BY REFERENCE ALL
FACTUAL ALLEGATIONS SET FORTH IN THE FIRST AMENDED COMPLAINT
(EFC NO. 19) AND ANY SUBSEQUENT FACTUAL PROFFERS PERMITTED
BY THE COURT, AS IF FULLY SET FORTH HEREIN.

PERSONAL INVOLVEMENT: ON INFORMATION AND BELIEF, AND
IS WILL BE FURTHER DETAILED IN DISCOVERY AND MDC/BOP
RECORDS WITHIN DEFENDANT'S CONTROL, CO LEE, CO LAMOUR,
CO VALENTIN, OIC GONZALEZ, CO AIRES, CO HENDERSON,
CO CALIXTE, CO VASQUEZ, CO D.GONZALEZ (BIG), CO PERRY,
CO REYES, CO DIAZ, CASE MANAGER PHAYERS, AND CO PEÑA,
WERE PERSONALLY INVOLVED IN ONE OR MORE OF THE CONST-
ITUTIONAL VIOLATIONS PREVIOUSLY ALLEGED, INCLUDING BUT
NOT LIMITED TO INTERFERENCE WITH PLAINTIFF'S LEGAL MAIL AND
ACCESS TO THE COURTS, RETALIATION FOR PROTECTED PETITIONING
GRIEVANCES, AND UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT/
DELIBERATE INDIFFERENCE AT MDC BROOKLYN.

WHERE THE FIRST AMENDED COMPLAINT REFERENCED ACTIONS BY
"COS" "CORRECTIONAL OFFICERS", "MDC OFFICERS", OR "JOHN/JANE
DOE OFFICERS", THOSE ALLEGATIONS ARE HEREBY CONFORMED TO

SPECIFICALLY INCLUDE CO LEE, CO LAMOUR, CO VALENTIN
OIC GONZALEZ, CO AIRES, CO HENDERSON, CO CALIXTE,
CO VASQUEZ, CO D. GONZALEZ (BIG), CO PERRY, CO REYES,
CO DIAZ, CASE MANAGER PHAYERS, AND CO PEÑA, BASED
ON INFORMATION OBTAINED AFTER THE FILING OF PLAINTIFFS
FIRST AMENDED COMPLAINT.

## RETALIATION - BACK & TOLLING

PLAINTIFF LACKED THE TRUE IDENTITIES OF CO LEE, CO LAMOUR,
CO VALENTIN, OIC GONZALEZ, CO AIRES, CO HENDERSON,
CO CALIXTE, CO VASQUEZ, CO D. GONZALEZ (BIG) CO PERRY
CO REYES, CO DIAZ, CASE MANAGER PHAYERS, CO PEÑA,
AT THE TIME OF THE ORIGINAL AND FIRST AMENDED FILINGS;
THEIR IDENTITIES WERE UNIQUELY WITHIN BOP/MDC CONTROL
AND REVEALED (OR CONFIRMABLE), THROUGH DISCOVERY, LOGS,
DUTY ROSTERS, MAILROOM RECORDS, SURVEILLANCE, AND
SIS/ADMINISTRATIVE FILES, AND PLAINTIFFS NEWLY
DISCOVERED FILES AND CONFIRMED FILES.

AMENDMENT TO NAME THESE INDIVIDUALS SHOULD RELATE BACK
UNDER FED. R. CIV. P. 15(c)(1)(c) AND KRUPSKI V. COSTA
CROCIERE S.p.A., 560 U.S. 538 (2010) BECAUSE THE NEW
DEFENDANTS RECEIVED OR SHOULD HAVE RECEIVED NOTICE
OF THE ACTION THROUGH THEIR EMPLOYER OR COUNSEL (UNITED
STATES ATTORNEY'S OFFICE / BOP) SUCH THAT THEY WILL NOT BE
PREJUDICED, AND THE FAILURE TO NAME THEM EARLIER WAS

DUE TO MISTAKE/UNKNOWN IDENTITY RATHER THAN STRATEGY, PLAINTIFF ALSO INVOKES ANY APPLICABLE EQUITABLE TOLLING PRINCIPLES ATTRIBUTABLE TO MDC MAIL DELAYS, FILE LOSS/ WITHHOLDING, AND RESTRICTED ACCESS DOCUMENTED ON THE DOCKET.

## PRAYER FOR RELIEF

PLAINTIFF REQUESTS THAT THE COURT ENTER JUDGEMENT:

A. AWARDING COMPENSATORY AND PUNITIVE DAMAGES AGAINST THE INDIVIDUAL DEFENDANTS IN AMOUNTS TO BE DETERMINED AT TRIAL;

B. GRANTING DECLARATORY AND, IF AVAILABLE, APPROPRIATE INJUNCTIVE RELIEF CONSISTENT WITH THE COURT'S PRIOR ORDERS

C. AWARDING COSTS AND FEES AS PERMITTED BY LAW; AND

D. GRANTING ALL FURTHER RELIEF THE COURT DEEMS JUST AND PROPER.

## JURY DEMAND

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL TRIABLE ISSUES.

ALL OF THESE OFFICERS AND OTHERS ARE GUILTY OF WHAT WAS BEING DONE TO ME AND NOT REPORTING IT TO MEDICAL, THEIR DIRECT SUPERVISORS OR ANY OTHER INVESTIGATIVE BODIES HERE AT MDC BROOKLYN. MY LIFE WAS IN DANGER AT ALL TIMES AT

MDC BROOKLYN AND MAY VERY WELL STILL BE. A REMINDER TO THE COURT THAT I WAS TOLD BY THE U.S. MARSHALS THAT I HAVE A TOTAL SEPERATION FROM ALL BOP OFFICERS WHILE I'm AT A HOSPITAL. YET I CAN LIVE RIGHT HERE IN THE LION'S DEN WHILE I'M DOING THIS LAWSUIT HERE, AND AGAINST STAFF AT MDC.

Thank You

Stephen Lokurto pro se
Stephen Lokurto pro se

I declare under penalty of perjury that the foregoing is true and correct

Certificate of Service

The undersigned certifies that the foregoing was served in accordance with the requirements of FRCP Rule 5 by mailing a copy there of this

_____ day of _____ 2025 to:

United States Attorney
Eastern District of New York
HUSA Elizabeth B. Gates
271-A Cadmoro Plaza East
Brooklyn New York 11201

Unit J-71
Legal Mail
Box

C.O. LEE: AT FIRST I THOUGHT SHE MAY HAVE BEEN IGNORANT TO WHAT WAS DONE TO ME ON 1/15/21 AND OTHER TIMES WHEN I ATE MY "NO FLESH" TRAY. HOWEVER WHEN I RELIVE THE SAME EXACT THING THAT HAPPENED TO ME ON 1/15/21, WHICH I OFTEN DO WITH EVERYONE INVOLVED, I KNOW FOR A FACT SHE KNEW HERNANDEZ PUT SOMETHING FOREIGN IN MY FOOD, PURPOSELY PASSED ME MY "NO FLESH" TRAY, AND HEARD ME SCREAMING ALL DAY LONG AND WEEKEND LONG WHEN I WASN'T PASSED OUT. C.O. LEE WHO IS STILL WORKING HERE AT MDC (I SAW HER RECENTLY), IS GUILTY OF 3 DIFFERENT ASPECTS OF WHAT HAPPENED TO ME WHILE I WAS IN THE EAST SHU THROUGH 1/18/21. WILLINGLY AND KNOWINGLY PASS ME MY "NO FLESH" TRAY WITH A FOREIGN SUBSTANCE IN IT, DID NOT NOTIFY MEDICAL OR INFORM HER RELIEF OFFICER THAT I WAS SICK AND SCREAMING ALL DAY LONG "HELP ME, I'M DIEING" AND SUDDENLY PASSED OUT IN MY CELL. OFFICERS HAD TO OPEN MY DOOR WHEN I WAS LYING IN BED AND STACK THE FOOD TRAYS IN MY CELL BY THE TOILET BOWL. THIS ACT IS ILLEGAL AND WAS DONE NOT TO INFORM THE SUPERIORS THAT I WAS ON A HUNGER STRIKE, AND NOT TAKING MY FOOD. AS STATED IN A PRIOR MOTION, I'M A PERFECT INMATE, GET UP EARLY AT 4:30 AM AND MAKE MY BED, MEDITATE FOR AN HOUR AND CLEAN MY CELL EVERYDAY.

C.O. LAMOUR: PASSED ME A "NO FLESH" FOOD TRAY WITH A FOREIGN, POISONOUS SUBSTANCE IN IT ON MORE THAN ONE OCCASION WHILE I WAS IN THE EAST SHU AND WEST SHU FROM 11/20/20 THROUGH 1/18/21. ON 4/6/21, C.O. LAMOUR TOLD ME "I GUESS YOU WEREN'T PLAYING", KNOWING THAT HE PASSED ME A "NO FLESH" MEAL WITH A FOREIGN POISONOUS SUBSTANCE IN IT. HE SAW THE REACTION I HAD IN MY BODY FROM HIS FOOD AT DIFFERENT TIMES.

EVERYBODY KNOWS I'M A VERY GOOD INMATE BY FOLLOWING ALL THE RULES. I NEVER MESS UP.

C.O. LAMOUR IS GUILTY OF (3) THINGS ALSO. 1) HE PASSED ME A "NO FLESH" TRAY ON MORE THAN ONE OCCASION WITH A FOREIGN, POISONOUS SUBSTANCE IN IT. 2) C.O. LAMOUR DID NOT NOTIFY MEDICAL SUSPECTING OR KNOWING I WAS SICK FROM THE FOOD HE OR OTHERS (OFFICERS) PASSED ME. 3) DID NOT NOTIFY HIS SUPERVISORS THAT HE OR OTHERS POISONED MY "NO FLESH" TRAY AND WHAT WAS GOING ON. IF C.O. CAMPBELL KNEW, SO DID EVERYONE ELSE.

C.O. VALENTIN: WAS THERE ON JANUARY 18th, 2021 MONDAY.
I THOUGHT IT WAS SATURDAY THE 16th WHEN I HIT THE BUTTON
AND IT FINALLY DID WORK IT WAS MONDAY, MARTIN LUTHER KING'S
BIRTHDAY. VALENTIN SAID "WHY'D YOU DO THAT FOR" "THEY'RE
COMING". I REPLIED THAT'S WHAT YOU SAID YESTERDAY, THINKING
IT WAS SATURDAY THE 16th. I TOLD VALENTIN "I'VE BEEN SCREAM-
ING SINCE YESTERDAY AND YOU GUYS SAID THEY WERE COMING"
WHEN I CAME BACK FROM THE QUEENS REHAB CENTER TO THE
WEST SITU ON 4/1, 4/2, OR 4/3, I CHECKED MY FOOD LIKE I
STARTED DOING TO SEE IF IT WAS SEALED. ONE TIME WHEN
VALENTIN PASSED ME MY FOOD THROUGH THE SLOT, AND I CHECKED
IT, VALENTIN TOLD ME HE CHECKED IT ALREADY TO SEE IF IT WAS
SEALED. BY HIM CHECKING MY FOOD TRAY WHEN I CAME BACK,
PROVES THAT HE HAD KNOWLEGE ABOUT WHAT WAS BEING DONE
TO MY FOOD. AT ONE POINT VALENTIN TOLD ME "I KNOW WHAT I DID"

O.I.C. GONZALEZ: FED ME A TRAY WITH POISON IN IT WHILE HE WORKED THE RANGE IN THE EAST SHU. HE KNEW IT WAS POISENED FOR SURE BECAUSE HE IS THE ONLY ONE THAT WORE A DISGUISE. HIS DISGUISE WAS MADE UP OF PULLING HIS BLACK HAT WITH A GREY HORIZONTAL STRIPE FAR TO HIS EYEBROWS. HE ALSO HAD ON GLASSES AND A MASK. HE IS ALSO THE ONLY ONE THAT PICKED UP THE GARBAGE AND THE TRAY IMMEDIATELY AFTER HE FED THE RANGE. HE DID THIS TO DESTROY THE EVIDENCE. O.I.C. GONZALEZ IS EASILY RECOGNIZABLE BY HIS STOUT SIZE. I BELIEVE GONZALEZ IS COOPERATING WITH THE INVESTIGATION.

NOTE!
All of these officers should easily pass any motion to dismiss by the defendants. Reason being, this court and Judge Bulsara approved Co. Lee, Co. Lamour, and Co Valentin to be added to plaintiffs Second Amended Complaint.
The only reason all of the participating officers aren't added to this Second Amended Complaint is they did not do any bad acts at MDC Brooklyn

C.O. AIRES is ALSO COOPERATING WITH THE INVESTIGATION.
C.O. ARES PASSED ME FOOD WITH POISON IN IT. ONE TIME WHEN
I HAD STOPPED EATING MY TRAY BECAUSE OF THE POISON IN IT,
I ASKED FOR BREAD, EVEN EXTRA BREAD, BUT ARES WOULDN'T
EVEN PASS ME ONE SLICE OF BREAD. I HAD TO BEG FOR IT
BECAUSE HE KNEW IT WAS POISONED. ARES EVENTUALLY GAVE
IN AND GAVE ME THE BREAD, I IMMEDIATELY KNEW THAT
THEY EVEN POISONED THE BREAD TOO BY THE IMMEDIATE
PAIN IN MY STOMACH. THE OFFICERS HAD FIGURED OUT
I WAS STARVING BY EATING THE BREAD. SO THEY GOT ME WITH
THE BREAD. DON'T FORGET THERE IS NOTHING TO EAT IN THE SHU
FROM COMMISSARY, AND I MUST EAT WHAT THEY SERVE ME
TO GET MY CALORIES, ESPECIALLY BEING A VEGETARIAN
SINCE 2008, IT IS ALWAYS DIFFICULT TO EAT ENOUGH PROTEIN.

C.O. HENDERSON: PASSED ME AN "NO FLESH" TRAY WITH POISON IN IT WHEN HE WORKED THE RANGE IN THE EAST SHU. HENDERSON WORKED THE RANGE OFTEN, HE ALWAYS HAD A BIG GRIN ON HIS FACE WHEN THERE WAS SOMETHING IN THE FOOD, C.O. HENDERSON ALSO WORKED IN THE QUEENS REHAB CENTER. ONE TIME WHEN HE WAS WORKING THE REHAB HE FORCED C.O. MARTINEZ OUT OF HIS SEAT, WHICH WAS RIGHT BEHIND THE HEAD OF MY BED. THIS WAS AS SOON AS I GOT FROM THE I.C.U. AT NYU LANGONE/LUTHERAN HOSPITAL. I FIGURED OUT LATER ON WHY HE LIKED TO SIT THERE. HE LIKED THAT SEAT SO HE COULD WATCH THE NURSE CHANGE MY DIAPER AND SEE ME DIRTY DOWN THERE FULL OF POOP AND NAKED. THE NURSE EVEN HAD TO GIVE HIM A DIRTY LOOK AND HARD STARE TO GET HIM TO STOP LOOKING. WHEN HE WAS STRETCH- ING HIS NECK TO SEE ME DOWN THERE DIRTY AND NAKED. HENDERSON DID SOMETHING ELSE TO ME IN THE REHAB BUT THERE IS NO REASON TO MENTION THAT NOW. I BELIEVE THE COURT ALREADY KNOWS

C.O. CALIXTE: WAS THE RECREATION OFFICER. HE ALSO FED THE RANGE AND GAVE SHOWERS 3 TIMES A WEEK. C.O. CALIXTE WAS THERE IN THE EAST SHU OFTEN. ONE TIME WHEN HE FED ME A POISONED TRAY, THERE WAS BLACK BEANS IN THE 2 SMALLER SECTIONS OF THE TRAY. I FIGURED OUT THAT THEY POISONED ONE SIDE OF THE TRAY WITH BEANS IN IT, AND I ONLY ATE THE SIDE WITHOUT THE POISON IN IT, I HAD HOPED. THE OTHER SIDE WAS BUBBLING LIKE IT WAS A POTION. WHEN CALIXTE SEEN THAT I ATE THE ONE SIDE AND THE OTHER WAS BUBBLING, LIKE I JUST STATED, HE LOOKED AT ME AND THE FOOD TRAY WITH HIS EYES POPPING OUT LIKE HE WAS SHOCKED. THAT IN AND OF ITSELF SHOWS THAT HE WITHOUT A DOUBT KNEW THAT HE OR SOMEONE ELSE POISONED THE TRAY AND YET HE STILL SERVED IT TO ME.

C.O. VASQUEZ: SERVED ME A TRAY WITH D. GONZALEZ FROM THE KITCHEN WHEN C.O. CAMPBELL REFUSED TO SERVE ME THE POISONED TRAY. NOT ONLY WAS THE TRAY POISONED, BUT THEY PUT THE POISON IN THE INDIVIDUAL CUPS OF SALSA IN A STYROFOAM CUP. IT WAS HARD TO TELL THE FOOD WAS POISONED BECAUSE THAT TYPE OF HISPANIC DIS IT OF RICE AND BEANS IS SPICY BY ITSELF. THAT'S HOW I KNEW THE FOOD WAS POISONED, WHEN IT WAS SPICY AND THE KIND OF FOOD I WAS EATING AT THE TIME, WASN'T SUPPOSED TO BE SPICY AT ALL. THE 2 OF THEM CAME UP MORE TIMES, AND THEY DID NOT WORK THE EAST SHU AND THERE IS NO OTHER REASON FOR THEM TO BE THERE, BUT TO GET ME.

C.O. D. GONZALEZ (BIG) WAS ASSIGNED TO THE KITCHEN FOR AT LEAST SOME IF NOT ALL OF THE TIME WHEN THESE THINGS WERE GOING ON. C.O. D. GONZALEZ (BIG) WAS CALLED INTO THE EAST SHU TO SERVE ME FOOD WHENEVER SOMEONE REFUSED TO SERVE ME A POISONED TRAY OF "NO FLESH" FOOD. THIS HAPPENED SEVERAL TIMES AS STATED ABOVE. ONE OF THE TIMES C.O. D. GONZALEZ WAS ACTIVELY SERVING ME A POISONED TRAY OF FOOD, WAS WITH C.O. VASQUEZ AND THE SALSA C.O. D. GONZALEZ DOES NOT WORK FOR THE BOP ANYMORE, HE NOW WORKS WITH THE U.S. MARSHALLS. THIS IS ALSO A SIGN OF GUILT. PLUS HE DID NOT NOTIFY MEDICAL, HIS RELIEF, SENIOR OFFICER OR INVESTIGATING BODY.

C.O. PERRY WORKED THE EAST SHU OFTEN AND WATCHED ME IN THE QUEENS REHABILITATION CENTER. C.O. PERRY ALSO PASSED ME TRAYS OF POISONED FOOD, AND WAS THE ONE HIDING BEHIND THE WALL WHILE I WAS HAVING MY SICK CALL VISIT WITH NURSE DUNCAN. C.O. PERRY IS THE ONE WHO TOLD ALL OF THE OTHER OFFICERS THAT I WAS TELLING NURSE DUNCAN ABOUT MY FOOD BEING POISONED. C.O. PERRY IS DIRECTLY INVOLVED WITH EVERYTHING THAT HAPPENED TO ME BEFORE, DURING, AND AFTER, INCLUDING THE REHAB, WHICH I'M NOT SUPPOSED TO MENTION. C.O. PERRY FAILED TO NOTIFY SICK CALL EVER, OR HIS SUPERVISORS OF WHAT'S GOING ON. THAT MAKES HIM GUILTY OF EVERYTHING THAT EVERYONE DID TO ME.

C.O. REYES: WORKED THE EAST SHU (SPECIAL HOUSING UNIT) WHILE POISONED FOOD WAS BEING PASSED TO ME. HE MAY VERY WELL HAVE PASSED ME FOOD WITH C.O. D. GONZALEZ OR BY HIMSELF WHILE ALL THIS WAS GOING ON. THE INVESTIGATION WILL PROVE THIS AND WHAT ELSE WAS GOING ON. C.O. PERRY WALKED THE CATWALK THAT RAN BEHIND ALL THE BEDS IN THE EAST BUILDING. HE WALKED BEHIND THE WALL THAT RAN BEHIND MY BED, TORMENTING ME LATE AT NIGHT WHILE I WAS SLEEPING, BANG-ING ON THE WALL AND YELLING THINGS AT ME KEEPING ME UP AND GIVING ME SLEEP DEPRIVATION WHICH IS A FORM OF TORTURE. THE SAME AS THE OTHER PLACES.

C.O. DIAZ: WAS ALSO PART OF THE EAST SHU CREW (GANG) KNEW ABOUT EVERYTHING THAT WAS GOING ON WITH MY FOOD AND FAILED TO REPORT IT. C.O. DIAZ TRIED TO SET ME UP WITH AN OPEN PACK OF NEWPORTS WITH ONE CIGARETTE MISSING TO TAKE BACK WITH ME TO MDC BROOKLYN OR SMOKE THEM. I DID NOT GO FOR THE SET UP AND TURNED THEM IN TO A C.O. I KNEW I COULD TRUST. I WILL GIVE HIS NAME AT A LATER TIME AND DATE.

CASE MANAGER PHAYERS WAS DEEPLY INVOLVED WITH EVERYTHING THAT HAPPENED TO ME. THE COVER-UP OF POISONING ME AT THE HOSPITAL IN THE I.C.U. AND AT THE REHAB CENTER IN QUEENS, NY. PHAYERS IS THE ONE WHO ORIGINALLY MIXED UP MY INSTITUTIONAL REMEDIES ON PURPOSE WHEN I ASKED HIM TO MAKE COPIES. JUST THE OTHER DAY CASE MANAGER PHAYERS TOLD ME IN THE ELEVATOR THAT "THEY SAY I TRIED TO KILL YOU." THAT IS THE SAME EXACT THING THAT OIC HERNANDEZ SAID TO A GROUP OF OFFICERS WHILE HE WAS IN THE OFFICE OF THE WEST SHU AND I WAS RIGHT ACROSS IN THE CHANGING ROOM. I SAID TO PHAYERS IN THE ELEVATOR "I SAID YOU WERE PART OF THE CONSPIRACY." I DIDN'T ANSWER HIM THE FIRST TIME SO HE REPEATED IT. I ANSWERED THEN AFTER THE SECOND TIME HE SAID IT. THERE WAS A WITNESS IN THE ELEVATOR, AGAIN I KNOW I CAN'T TALK ABOUT IT, BUT CASE-MANAGER PHAYERS IS DIRECTLY INVOLVED IN MANY OF THE CRIMES AND INCIDENTS COMMITTED AGAINST ME IN THE REHAB AND THE HOSPITAL. I UNDERSTAND THAT I AM NOT ALLOWED TO BRING UP WHAT HAPPENED IN THE REHAB AND HOSPITAL. THIS INFORMATION IS TO BE PRESERVED FOR THE APPEAL AND USED TO HELP WITH THE TIMING OF EVENTS.

CO PEÑA: ON THE EVENING OF SATURDAY, OCTOBER 18, 2025, CO PEÑA WAS MAKING FUN OF ME BY SAYING OVER AND OVER "YOU LOST," AFTER I TOLD HIM I LOST EVERYTHING. IN JUDGE GAROUFIS'S OPINION 10-CV4589 RELATED 03-CR-1382 DATED APRIL 10, 2025, JUDGE GAROUFIS NOTES: LOCURTO STATES "THE BOP STAFF WRONGFULLY WITHHELD HIS MAIL SHORTLY BEFORE HIS SCHEDULED CALL WITH HIS ATTORNEY, JAMES ROTH. JUDGE GAROUFIS THEN GOES ON TO STATE LOCURTO SUGGESTS THAT THE BOP STAFF WERE VISIBLY HAPPY WHEN THEY GAVE HIM HIS MAIL, BECAUSE THEY ALREADY READ IT BEFORE GIVING IT TO HIM AND WANTED TO HURT HIM. THIS WAS CO PEÑA WHO OPENED MY MAIL AND TOLD ME TO READ IT BEFORE I GOT ON THE PHONE FOR MY LEGAL CALL ON AUGUST OF 2021 AFTER I CAME BACK FROM THE DEAD AND HARRY BATCHELDER MY EX-ATTORNEY WROTE A NEW AND DIFFERENT AFFIDAVIT.

AS CO PEÑA WAS ANTAGONIZING ME ON SATURDAY, OCTOBER 19th, 2025, HE WAS RUBBING HIS CROTCH THROUGH HIS PANTS. I ASK THE COURT TO LOOK BACK AT MY NOTES TO SEE HOW INVOLVED PEÑA WAS WITH EVERYTHING BESIDES THE MAIL. PEÑA IS GUILTY OF POISONING BEFORE, DURING, AND AFTER.

BP-8



BRO-1330.13E

<u>INMATE REQUEST FOR INFORMAL RESOLUTION</u>

NAME: _LoCurto, Stephen_ REG. NO. _SP095053_ UNIT: _T 71 /SH4_

Specific Issue Needing Resolution: _While in the East S.H.U. from 11/12/20 - 11/15/21 my food was poisoned_

Explain, in detail the issue: _The near fatal attempt was Friday 11/15/21 at lunch time. I continued to yell for help and hit the emergency button, which was turned off I did not receive medical attention until Sat. 11/16/21 where I was rushed to the hospital. I was taken to Rehab to soon._

Inmate Signature _Stephen LoCurto_ Date _4/6/21_

**TO BE COMPLETED BY COUNSELOR**

Date Received: _4/8/21_

Action taken: _I have still not have no response from the S1S Department regarding your issue._

COUNSELOR SIGNATURE _V. Williams_ DATE _4/14/21_

**TO BE COMPLETED BY UNIT MANAGER**

Informal Resolution Received: _____

Unit Manager Signature: _____ Date: _____

Extension Granted: _____ Date Due: _____

Reason for Extension: _____

UNIT MANAGER APPROVAL _W. Williams_ DATE: _4/15/21_

BP-9



Remedy Number 1079878-F2
Locurto, Stephen
Reg. No. 58095-053

This is in response to your Request for Administrative Remedy
dated May 1, 2021. You stated that while you were housed in the
East Special Housing unit, your lunch meal was poisoned by staff.
Specifically, you stated you observed a staff member bring you a
no flesh lunch tray directly from the office. You further
alleged that when you consumed your lunch meal, you became
extremely ill. You stated when you became ill, you depressed the
emergency call button in your cell for assistance, but staff
ignored your call. You claimed staff turned off the call bell in
your cell. You stated you were rushed to the local hospital the
next day.

All allegations of staff misconduct are taken seriously. Your
allegation has been referred to the appropriate department for
further review. However, you will not be informed of the outcome
of any staff investigation.

If dissatisfied with this response, you may appeal to the
Regional Director, Federal Bureau of Prisons, Northeast Regional
Office, U.S. Customs House, 2nd and Chestnut Street,
Philadelphia, PA. 19106. Your appeal must be received in the
Regional Office within 20 calendar days from the date of this
response.

_____          5-24-2021
Heriberto H. Tellez, Warden                  Date


7019 2280 0001 0385 8959

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: LoCurto Stephen     58095-053     IA (61)     M.D.C Bklyn

LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A - INMATE REQUEST**

ON Friday 1/15/21 at lunch time, while located in the East SHu Range #1 Cell #2, which was located in front of the OIC's office and the 2 way mirror, my food was poisoned. This was done by OIC Hernandez who passed my no-flesh tray to CO. Lee, who brought me my food directly from the office. The Pain, unberable pain started right away, I then continued to yell and scream for help. I then saw OIC Hernandez walk Quickly past my Cell towards the other end of the range, I then started to throw up, at this time I started to hit the emergency call button, when it didn't work, I realized, OIC Hernandez turned it off. Many officers heard me screaming in pain.

5/1/21     _Cpt. L Lof_
DATE     SIGNATURE OF REQUESTER

**Part B - RESPONSE**

___

DATE     WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**     CASE NUMBER: 1079878-F1

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C - RECEIPT**     CASE NUMBER: 1079878 F1

Return to: _____

LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

___

DATE     RECIPIENT'S SIGNATURE (STAFF MEMBER)

FPI-PEPR     PRINTED ON RECYCLED PAPER     BP-229(13)
APRIL 1982

Some of the officers were, Hernandez, Lee, Lamour, Valentin, and others throughout the next 2 shifts. At one point throughout the night, I even saw officers ducking down when they passed my window of my cell. I didn't sleep and continued to yell and scream "please help me" "I'm dying" and hit the button all night long. Only after I tried the button on 1/18/21 and it did work was medical called. When I hit the button that time, C.O. Valentin said "why did you do that" "they are coming." Then I said "you guys have been saying that since yesterday." That is when C.I.C. Gonzalez called medical. I was rushed to the 3rd floor medical unit and then rushed to the emergency room at N.Y.U. Langone.

It is quite obvious by what is written above that M.D.C. personnel exhibited "negligence, gross negligence, recklessness and deliberate indifference with respect to my health and safty." These personnel stated and others, were "negligently hired, retained and supervised" by their superior officers and administrative personnel.

"It was foreseeable that I would sustain serious and permanet bodily injuries, pain and suffering and loss of enjoyment of life due to M.D.C. personnel ignoring my serious and progressive medical condition

I have been here at M.D.C. for 8 years this time, with many months in the S.H.U. All the staff know I don't complain, or give them a hard time. Prior to the near fatal attempt on my life on 1/15/21 I told my primary care provider M.S. Gina Duncan F.N.P. that my food was poisoned. At other times my food was poisored, not as strong, and I was able to flush it out. The dates I was poisoned were, 11/18/20, 11/20/20, 11/22/20, 12/1/20 1/6/21, 1/14/21 and 1/15/21. Some of the poisoners were: OIC Herrandez, (Big) Gonzalez, Co Vasquez caixte Hotter recreation and shower officer, Co. Henderson and others.

Stephen LoCurto
# 58095-053

BP-10



BP-10

STEPHEN LOCURTO, 58095-053
BROOKLYN MDC     UNT: I     QTR: I01-601L
P.O. BOX 329001
BROOKLYN,  NY 11232

# MAILED FROM NERO AUGUST 20, 2021



LOCURTO, Stephen
Reg. No. 58095-053
Appeal No. 1079878-R1
Page One

---

## Part B - Response

You appeal the response of the Warden of MDC Brooklyn and allege
staff misconduct. You felt there was not enough information in
BP-9 response regarding of your claim. You request an
information of the direction and complete investigation of this
matter.

A review of your appeal reveals the Warden adequately addressed
your complaint. In accordance with Program Statement 3420.11,
Standards of Employee Conduct, a thorough review will be
conducted. However, the results will not be disclosed to you
because you are not entitled to this information. You have not
provided any additional evidence or information for this office
to investigate this matter any further. This response is for
informational purposes only.

If you are dissatisfied with this response, you may appeal to
the General Counsel, Federal Bureau of Prisons. Your appeal must
be received in the Administrative Remedy Section, Office of
General Counsel, Federal Bureau of Prisons, 320 First Street,
N.W., Washington, D.C. 20534, within 30 calendar days of the
date of this response.

Date: August 16, 2021

N. C. ENGLISH
Regional Director

7020 1290 0000 4388 8710


Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: __LoCurto Stephen__ __58095-053__ __EA (61)__ __MDC Bklyn__

       LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

### Part A - REASON FOR APPEAL

I am not satisfied with the response to my BP-9 remedy # 1079878-F2. I feel I was not given enough information in the response, as per the direction and complete investigation

__5/27/21__
DATE

__[signature]__
SIGNATURE OF REQUESTER

### Part B - RESPONSE

DATE            REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE        CASE NUMBER: 1079878R1

### Part C - RECEIPT

CASE NUMBER: _____

Return to: _____

        LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____             _____

       DATE                  SIGNATURE, RECIPIENT OF REGIONAL APPEAL

UPN LVN        PRINTED ON RECYCLED PAPER        BP-230(13)
                                                        JUNE 2002

BF-11

Administrative Remedy Number 1079878-A1
Part B - Response

This is in response to your Central Office Administrative Remedy
Appeal, in which you allege on November 18, 2020, November 20,
2020, November 22, 2020, December 1, 2020, January 6, 2021,
January 14, 2021, and January 15, 2021, your food was poisoned
by staff. For relief, you request a review of camera footage
and a follow-up investigation.

We have reviewed documentation relevant to your appeal, and
based on the information gathered, concur with the manner in
which the Warden and Regional Director addressed your concerns
at the time of your Request for Administrative Remedy and
subsequent appeal. As previously advised, your allegations were
forwarded to the appropriate office for review pursuant to
Program Statement 3420.11, Standards of Employee Conduct. Staff
are held to a high standard of integrity and are obligated to
conduct themselves in a professional manner. In accordance with
5 U.S.C. 552a, Privacy Act, no inmate is entitled to be
apprised of the progress, outcome, or disposition of any review
of alleged staff misconduct. Similarly, any necessary action
taken against staff, will not be disclosed to you. A thorough
review will be conducted and proper action taken as deemed
necessary.

Accordingly, this response is provided for informational
purposes only.

_____11/10/21_____
Date

_____
Ian Connors, Administrator
National Inmate Appeals

(A) A.W 9-21-21

...th pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attach...
...mitted with this appeal.

oCurto Stephen     58095-053     IAIB     MDC Bklyn
LAST NAME, FIRST, MIDDLE INTIAL      REG. NO.      UNIT      INSTITUTION

**A - REASON FOR APPEAL**

I am not satisfied with the response to my
BP 10 case # 1079878 R1. I gave plenty
of information for a complete investigation.
There still needs to be a follow up investigation
of staff and camera footage.

8/31/21                          _____
DATE                             SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED

SEP 1 4 2021

Administrative Remedy Section
Federal Bureau of Prisons

_____                 _____
DATE                            GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE       CASE NUMBER: 1079878A

**Part C - RECEIPT**
                                CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INTIAL      REG. NO.      UNIT      INSTITUTION
SUBJECT: _____

_____                 _____
DATE                            SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)

PENA

Exhibit



--------------------------------------------------------------------------------------------------------

FROM: 58095053
TO: Roth, James
SUBJECT: RE: RE: FYI
DATE: 08/11/2021 08:23:06 PM

I told you not to contact Laura. They new what was in the letter, they told me to read it before I got on the phone.
What are you up to? You need to come up with something by our next legal call.
I'm very upset!!! So upset, that I had a mild stroke during that phone call, and didn't feel the numbness on my whole right side
till I got in my cell. I went to medical.
-----Roth, James on 8/8/2021 9:06 AM wrote:

>

No call no explanation ! Rescheduled for Tuesday . The Prof . Will be in my office office .

STEPHEN LOCURTO on 8/5/2021 8:20:46 PM wrote
What happened, I thought you were calling today?????
-----Roth, James on 8/4/2021 3:06 PM wrote:

>

We have a call scheduled for tomr between 9-12,Please flag any docs in the stip  that you want specifically to review . The other
exhibits were mailed to you in @ 6 packges yesterday evening

James Roth, Attorney At Law

**STAMPUR & ROTH**
299 BROADWAY, SUITE 800, NEW YORK, NEW YORK 10007

8/10  Paraufi's
for Doctor

RECEIVED
AUG 10 2021



NEW YORK NY 100
5 AUG 2021 PM

FIRST-CLASS

US POSTAGE
02 7H          $ 000.51°
0001236443    AUG 06 2021
MAILED FROM ZIP CODE 10007

SPECIAL MAIL: OPEN ONLY IN PRESENCE OF
INMATE
Stephen LoCurto, Register No. 58095-053
MDC Brooklyn
Metropolitan Detention Center
P.O. Box 329002
Brooklyn, NY 11232

69

No food
Changed

11232-900202

TRULINCS  58095053 - LOCURTO, STEPHEN - Unit: BRO-I-B

---------------------------------------------------------------------------------

FROM: 58095053
TO: Roth, James
SUBJECT: .
DATE: 08/18/2021 05:47:03 PM

Dear James Roth,

I can't help feeling that you are an agent for the Government.
On top of that you lied to me about speaking to the  only witness I have on my behalf, Laura Oppenheim.
Then you lied and said you filed for the CJA money for my medical records.
I was able to find the money ($1,800.00) to pay for the medical records on the belief you would return the money.
To date you have not applied for the money. Please return the money ASAP.
Professor Bernard k Freamon my lead attorney said he will be able to take over the case with the ability to apply for CJA funds
as needed. If he feels he needs help to maneuver around the Eastern District and the Second circuit I feel I would be better off
with the Federal Defenders office.
So I now have to ask ask you to step down as my attorney.
You should finish up the the work that is due by Friday 8/20/21 with Professor Freamon, and then resign.
Sincerely,
/s/
Stephen LoCurto
8/18/20



Notes of interview with Laura Oppenheim, Esq. 3 pm 7/9/13

w/Alan Nelson, Esq., BKF, Esq. and Ron Dwyer

We arrived on time and she greeted us and escorted us to the conference room. After pleasantries and introductions, she indicates that she is constantly getting phone calls from LoCurto and she wants it to stop. We indicate that we were not aware of this fact and I assure her that we will make sure the phone calls cease. We all agree that her status as a witness in the case makes such calls inappropriate and that they should cease. I explain that I have a good relationship with LoCurto and that I would prevail upon him to stop the phone calls. We explain our purpose and Alan asks how she got in the LoCurto case. She explains that she got a phone call from Harry Batchelder asking her to research the ex post facto issue for him. She indicated that he may have said to her that he had a plea offer of 20 years and he thought that it was not very good but he wanted to have a better handle on it so he wanted her to research it. At that time she often did research on Harry's cases for him and she ultimately did more work for Harry on the LoCurto case. She can't say exactly when she did the research but it was while she was at Mintz and Oppenheim. She indicated that she was not a CJA lawyer on the case because she was not on the CJA panel. Therefore there are no vouchers. She simply billed Batchelder for the work and he paid. On the ex post facto issue, it was a hot topic of discussion at the time among many of the criminal lawyers who had these cases and, as she recalled, Diarmuid White had a case on the ~~issue when arguing this in the 2nd circuit and she got the briefs on that case and briefs that~~ were arguing the issue from other circuits/courts.[?] She also did Westlaw research on the issue. She has checked her file to see if there is a memo to Harry and there is not. She also does not have her raw research and she thinks it would be difficult to get the Westlaw raw research and the computer records of her searches. She does not seem keen on digging out passwords, etc. to get her Westlaw billings at another law firm from so long ago. Alan asks her whether she recalled seeing the Minicone and Story cases and she indicates that she doesn't recall but she knows she did the research before giving Batchelder and LoCurto the opinion. She cannot recall exactly when she gave her opinion but she knows that it was at a meeting between the three of them at the MDC, after the government had offered LoCurto 20 years. She remembers that Batchelder's reaction was that she was the law person and he therefore deferred to her. He did not disagree with the advice she gave at the meeting. There may have been one other meeting but she is not sure. She did discrete research jobs for Harry; she was not involved in the day-to-day affairs of his practice. Alan shows her a series of letters from Harry to LoCurto, from her to LoCurto, from Harry to her, from LoCurto to the Court, the November 1 written offer letter from Greg Andres to counsel, and a May 10 letter from her to LoCurto, to try to jog her memory and get a time frame on the giving of advice but this does not help to nail down when the meeting occurred. We indicate that, according to LoCurto, there may have been on oral offer before the written offer but she is not aware of this, although it is possible. She was simply told that there was an offer of 20 years. She has no independent recollection that she knew at the time that the letter offer from Greg Andres existed. She admits that her advice was incorrect and she deeply



PLAINTIFF'S EXHIBIT
78



regrets that fact today. She tells us that she "will do the right thing." When Alan shows her the May 10 letter, I ask her whether LoCurto drafted the affidavit in support of the 2255 petition after receiving that letter and she says no, she drafted the affidavit and she takes full responsibility for it. She says there were many meetings in the MDC between her and LoCurto and sometimes with Batchelder. She says the meetings covered many topics and, as trial approached, it was clear that LoCurto was intent on going to trial. She is sure that she told LoCurto he could get life if he were convicted but she also stands by what she said to him, as indicated in the affidavit, and she agrees now that this advice was erroneous. We have a brief discussion about LoCurto's Brady/Giglio issues and Alan asks her whether she recalls being involved in any of that. She vaguely recalls that she might have been involved as she did all of the in limine motions for LoCurto but one would have to check. She thinks there were three or four motions. Alan indicates that she will be getting a subpoena and she is agreeable to that. She expresses the desire to receive the subpoena by e-mail and Alan indicates he will send it over to Ron Dwyer and Ron will serve her. We conclude the meeting at about 4:10? pm.

BKF



PLAINTIFF'S
EXHIBIT

78